**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NA'QUAN THOMAS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 26-CV-0149 |
| | : | |
| THE ARBOR COMPANY, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**COSTELLO, J.**                                                                **MARCH  16 , 2026**

Plaintiff Na'quan Thomas filed a *pro se* Complaint naming The Arbor Company and

Blue Ridge Senior Housing LLC as Defendants and asserting claims under Title VII of the Civil

Rights Act of 1964 ("Title VII").  Thomas also seeks leave to proceed *in forma pauperis*.  For

the following reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and

dismiss the Complaint with leave to amend.

## I.        FACTUAL ALLEGATIONS

Thomas alleges he was hired by Defendants on December 10, 2025, as a Resident

Assistant in the Memory Care Unit of the Arbor Terrace at Willistown, where he was responsible

for the daily care, safety, and supervision of residents.  (Compl. ¶ 5.)  On January 7, 2026, during

his regular shift, Thomas was assigned to Memory Care Unit 2, where he was responsible for 13

residents.  (*Id*. ¶ 8.)  While Thomas was escorting his assigned residents to the dining hall for

dinner around 4:30 pm, a co-worker assigned to Memory Care Unit 1 "addressed [Thomas] in an

aggressive and hostile manner" and ordered Thomas to go to Room 114, part of the co-worker's

unit, and bring the resident there to dinner.  (*Id*. ¶¶ 9-10.)  Thomas complied and attempted to

summon the resident to dinner, but the resident declined.  (*Id*. ¶¶ 11-12.)  Thomas informed his

co-worker of the resident's decision and the co-worker became irate, "respond[ing] with hostility

and profanity." (*Id*. ¶¶ 12-13.)  Rather than respond accordingly, Thomas went about completing his shift, assisting with meal distribution and resident care.  (*Id*. ¶ 14.)  Shortly thereafter, Thomas's supervisor, Monique Fordyce, approached Thomas and told him that he "must either retrieve [the resident in] Room 114 or 'go home,'" which Thomas understood to mean that he would be fired.  (*Id*. ¶ 15.)  Mary Macklin, a Black female resident assistant, informed Fordyce that Thomas "was not in the wrong and that Room 114 was not assigned to [him]."  (*Id*. ¶ 17.)  Fordyce appeared to disregard Macklin's account, stating it didn't matter who was assigned to Room 114.  (*Id*. ¶ 18.)

Thomas was called later that day to a meeting with Alexis Principle, Executive Director of the Arbor Terrace.  (*Id*. ¶¶ 19-21.)  Principle repeatedly interrupted Thomas rather than letting him explain what happened during the incident, and then told Thomas he was being fired because he "should have listened" to Ms. Fordyce.  (*Id*. ¶¶ 21-22.)  Thomas was not provided a written notice of termination or a written explanation of why he was being terminated.  (*Id*. ¶ 23.)  As a result of his termination, Thomas asserts he suffered loss of employment, loss of income and benefits, emotional distress, humiliation, mental anguish, and damage to his professional reputation.  (*Id*. ¶ 29.)  He alleges he suffered racial discrimination, a hostile work environment, retaliation, and wrongful termination.  (*Id*. ¶¶ 31-38.)  Thomas asserts that he has exhausted or will exhaust his administrative remedies.  (*Id*. ¶ 30.)  He seeks monetary damages and attorney's fees. (*Id*. at 4.)

## II.     STANDARD OF REVIEW

The Court grants Thomas leave to proceed *in forma pauperis* since he appears unable to pay the filing fee.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under §

1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Thomas's Complaint fails to allege a plausible Title VII claim.  "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (internal quotation marks and citation omitted).  To state an employment discrimination claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element," *i.e.*, discrimination based on his membership in a protected class, here, race.  *Id.* at 213 (internal quotation marks and citation omitted); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  One way of pleading an employment discrimination claim is to allege what is known as a *prima facie* case, although doing so is not required.  *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("To defeat a motion to dismiss, it is sufficient to allege a prima facie case." (citation omitted)).  To do so, a plaintiff claiming discriminatory discharge under Title VII "must allege that: (1) [he] is a member of a protected class; (2) [he] was qualified for the position; (3) [he] was discharged; and (4) the employment action suggests an inference of discrimination because of [his] membership in the protected class, such as might occur when the position is filled by a person not of the protected class."  *Reese v. Horizon Blue Cross Blue Shield of N.J.*, No. 08-1382, 2008 WL 5188853, at *2 (D.N.J. Dec. 10, 2008) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996)); *Theophane v. Homeland Intel., LLC*, No. 25-1258, 2025 WL 887813, at *3 n.3 (E.D. Pa. Mar. 21, 2025) ("Theophane must plausibly allege that he: (1) is a member of a protected class; (2) was qualified for the position he sought to attain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.").

To plead a hostile work environment claim, a plaintiff must allege: (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotation marks, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). However, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination*." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (cleaned up); *see also Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).

For a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789 (citation omitted).

Thomas's Title VII claims are not plausible because he merely asserts legal conclusions without any facts in support. He asserts that "race was a motivating factor in Defendants' decision to terminate him." (Compl. ¶ 33.) However, Thomas fails to allege any facts indicating that his termination was linked to his race; in fact, he does not allege his own race or that of any other individual involved in the relevant events other than Mary Macklin, the African American co-worker who witnessed his confrontation with the unnamed co-worker. (*See generally id.*) Accordingly, Thomas's race-based discrimination claim is not plausible. *See, e.g., Favors v.*

*Sec'y U. S. Dep't of Veterans Affs.*, 695 F. App'x 42, 44 (3d Cir. 2017) (*per curiam*) (affirming dismissal of Title VII race discrimination claim where plaintiff "included no allegations whatsoever linking his termination to his race"); *Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*) (affirming dismissal of national origin discrimination claim where plaintiff had "submitted nothing but the naked assertion that he was discharged because he is Honduran").

In support of his hostile work environment claim, Thomas alleges he was "subjected to abusive language, threats, and unequal treatment" (Compl. ¶ 37), but makes no allegation that his mistreatment was related to his race.  He therefore fails to assert a plausible hostile work environment claim.  *See Oncale*, 523 U.S. at 80; *see also Wiggins v. Universal Prot. Servs. LLC*, No. 22-1491, 2022 WL 4116912, at *3 (3d Cir. Sept. 9, 2022) (*per curiam*) ("Wiggins did not state a prima facie case for a hostile work environment claim, as he did not make factual allegations that could suggest that his workplace was "permeated with *discriminatory* intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." (alterations in original)).

In support of his retaliation claim, Thomas asserts that he "engaged in protected activity by objecting to abusive treatment and improper work assignments."  (Compl. ¶ 34.)  However, only opposition to conduct prohibited by Title VII constitutes protected activity.  *See Ahmed v. Lowe's Home Ctrs., Inc.*, 346 F. App'x 816, 819 (3d Cir. 2009) ("To qualify as protected conduct under Title VII, Ahmed must show that he made Lowe's aware that he felt he was being discriminated against specifically because of his race or national origin." (citing *Slagle v. County of Clarion*, 435 F.3d 262, 268 (3d Cir. 2006) (holding that a complaint that does not explicitly or

implicitly allege that membership in a protected class was the reason for mistreatment is too general to constitute protected conduct under Title VII))).

Without more, Thomas has not plausibly alleged claims for employment discrimination, hostile work environment, retaliation, or wrongful termination.[1]  Because the Court cannot be certain at this stage that Thomas is unable to assert a plausible Title VII claim, however, the Court will grant him leave to amend his Complaint if he can plead additional facts sufficient to meet the standards set forth above.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice.  An order follows providing Thomas with additional information about filing an amended complaint if he is able to allege additional facts to cure the defects the Court has identified in his claims.

BY THE COURT:

_____
**MARY KAY COSTELLO, J.**

---

[1] To the extent Thomas asserts a state law wrongful termination claim, that claim is not plausible because Pennsylvania does not recognize a common law action for wrongful termination of at-will employment, *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009), and there is no allegation that Thomas was anything other than an at-will employee, *see McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000) ("[T]he presumption of all non-contractual employment relations is that it is at-will and that this presumption is an extremely strong one."); *see also Bennett v. Republic Servs., Inc.*, 179 F. Supp. 3d 451, 456 (E.D. Pa. 2016) ("In Pennsylvania absent a statutory or contractual provision to the contrary either party may terminate an employment relationship for any or no reason. An employer's right to terminate an at-will employee has been characterized as virtually absolute." (cleaned up)).

7